**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BRANDON FRANK PADGETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-1322 |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In March 2019, Brandon Frank Padgett sued JPMorgan Chase Bank, N.A. in state court to prevent Chase Bank from foreclosing on a house owned by Padgett's brother-in-law, Charles Foster. (Docket Entry No. 1-3). Chase Bank timely removed based on diversity jurisdiction and moved to dismiss for lack of standing. (Docket Entry Nos. 1, 4). Padgett responded and moved to remand. (Docket Entry Nos. 7, 8, 10). Based a careful review of the petition, the motions and responses, the record, and the applicable law, the court grants Chase Bank's motion to dismiss and denies Padgett's motion to remand. (Docket Entry Nos. 4, 7). The reasons are stated in detail below.

**I.    Background**

Padgett is a Texas citizen. He is married to Vanessa Laurent Foster. (Docket Entry No. 1-1 at 14). In 1980, Vanessa Foster's grandmother, Emma Lou Beavers Kimbro, made a will leaving a house in Houston to Vanessa Foster and her brother, Charles Foster, "to share and share alike." (*Id*. at 15). Kimbro died in 2005. Charles Foster was appointed as the independent estate administrator, and he and Vanessa Foster entered a "Family Settlement Agreement" to share

Kimbro's estate "in equity." (*Id*. at 16). In January 2007, Charles Foster executed a special warranty deed transferring title in the house to himself. (*Id*.).

In May 2008, Charles Foster obtained a line of credit with Chase Bank for $60,000, secured by the house. (Docket Entry No. 1-1 at 12–16). Charles Foster defaulted on the loan in October 2011. Chase Bank accelerated the loan, sent Charles Foster notices of default and intent to accelerate, and obtained a foreclosure order under Texas Rule of Civil Procedure 736. (Docket Entry Nos. 4, 4-1, 4-2). A timeline is helpful:

| | |
|---|---|
| October 2012: | Chase Bank sent Charles Foster a notice of default and intent to accelerate; |
| November 2012: | Chase Bank's counsel sent Charles Foster a debt-collection notice of "accelerating the maturity of the debt"; |
| January 2014: | Chase Bank filed the first application for an expedited foreclosure with the state court; |
| July 2014: | Chase Bank filed the second application for an expedited foreclosure; |
| July 2017: | Chase Bank sent Charles Foster a Notice of Rescission of Acceleration; |
| October 2018: | Chase Bank filed the third application for an expedited foreclosure with the state court, which issued a foreclosure order in March 2019. |
| April 2019: | A foreclosure sale was scheduled. |

(Docket Entry No. 1-1 at 15–16, 34).

According to the loan documents, by September 2018, Charles Foster was in default for $68,298.17, and "the total amount to pay off the loan agreement, contract, or lien" was $119,455.33. (Docket Entry No. 4-2 at 3).

In March 2019, Padgett filed his Original Petition and Application for Temporary Restraining Order in state court, seeking to prevent Chase Bank from foreclosing. (Docket Entry 1-1 at 12). Padgett alleges that he had an interest in the house because he married Vanessa Foster, who inherited an interest from Kimbro. The removal, the motion to dismiss, and the motion to remand followed. (Docket Entry Nos. 1, 4, 7, 8, 10).

## II.     The Motion to Remand

A defendant may remove if the federal court would have original jurisdiction over the action. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over civil actions if the amount in controversy exceeds $75,000 and complete diversity of citizenship exists. 28 U.S.C. § 1332(a); *Bynane v. Bank of N.Y. Mellon for CWMBS*, 866 F.3d 351, 355–56 (5th Cir. 2017); *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). "[C]omplete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). The removing party must prove federal jurisdiction. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Trafigura AG v. Enter. Prods. Operating LLC*, 995 F. Supp. 2d 641, 644 (S.D. Tex. 2014) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam)).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adv.*

*Comm'n*, 432 U.S. 333, 346–47 (1977); *see also Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) ("In an action for declaratory relief, the amount in controversy is the value of the right to be protected or the extent of the inquiry to be prevented." (citation omitted)). When the plaintiff seeks injunctive relief to stop a foreclosure, the court assesses the amount in controversy based on the value of the property. *See Farkas v. GMAC Mortg. LLC*, 737 F.3d 338, 341 (5th Cir. 2013); *Hernandez v. Residential Accredit Loans Inc.*, No. H-18-0724, 2018 WL 4033785, at *3 (S.D. Tex. Aug. 23, 2018). Courts may use Residential Broker Price Opinions to assess the property's value. *See Statin v. Deutsche Bank Nat. Tr. Co.*, 598 F. App'x 322, 322–23 (5th Cir. 2015).

Padgett is a Texas resident and Chase Bank is a national bank with its main office in Ohio. (Docket Entry No. 1 at 4; Docket Entry No. 7). There is complete diversity. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006) (a national bank resides in the state in which its main office, as designated in its articles of association, is located). Padgett challenges the court's diversity jurisdiction on the ground that the amount in controversy does not exceed $75,000. (Docket Entry No. 7 at 4). According to Padgett, the house's value is less than $75,000. (*Id*. at 5).

Padgett's state-court petition did not specify the damages he sought. (Docket Entry No. 1-2). In the notice of removal, Chase Bank submitted a "Residential Broker Price Opinion" issued by Lyda Alexandra Marinez, estimating the house's market value as $116,000 to $118,000, based on six comparable properties and their listed or actual sales prices. (Docket Entry No.1-2 at 3). Padgett argues that Marinez's Opinion cannot establish the house's fair market value, because she is a realtor, not a state-licensed appraiser. (Docket Entry No. 7 at 5). Padgett asks the court to consider the Harris County Appraisal District's assessment of the house's value at $69,159 as of January

2018. (*Id*. at 6–7; Docket Entry No. 7-1 at 6). Because the Appraisal District's estimate does not exceed $75,000, Padgett contends, the amount-in-controversy requirement is not met and the court lacks subject-matter jurisdiction. (Docket Entry No. 7 at 7).[1]

Chase Bank's notice of removal and the Residential Broker Price Opinion show by a preponderance of the evidence that the amount in controversy exceeds $75,000. The Opinion estimated the house's market value as $116,000 to $118,000. (Docket Entry No.1-2 at 3). Chase Bank submitted evidence showing that an independent broker issued the Opinion and that these opinions are "routinely used to determine the value of a property prior to foreclosure." (Docket Entry No. 11 at 5). The Opinion listed six comparable properties of similar location, lot size, age, leaseholder type, and other conditions. (Docket Entry No. 1-2 at 2–3). The six comparable properties were listed or sold at prices similar to the Opinion's estimate, all exceeding $75,000. Chase Bank has carried its burden of showing that the amount in controversy exceeds $75,000. *See Statin*, 598 F. App'x at 322–23 (the amount-in-controversy requirement was met based on a Residential Broker Price Opinion, though the Harris County Appraisal District estimated the property price at $62,392).

Although federal courts sometimes consider state-approved appraisal reports in evaluating a property's value for jurisdictional purposes, the Appraisal District's assessment does not divest the court of subject-matter jurisdiction. The Appraisal District estimated the property value at

---

[1] Padgett challenged the authenticity of Chase Bank's Residential Broker Price Opinion, arguing that the Opinion had Chase's header on each page. The Opinion stated that "THIS IS NOT AN OPINION OF VALUE OR COMPARATIVE MARKET ANALYSIS AND SHOULD NOT BE CONSIDERED APPRAISAL," and that it was only "for internal use." (Docket Entry No. 15 at 8–9). Responding to Padgett's motion to remand, Chase Bank submitted another copy of the Residential Broker Price Opinion, which, it contends, came from the third-party broker. (Docket Entry No. 11-2). Chase Bank also submitted an affidavit of its employee, Evan L. Grageda, testifying to the authenticity of the Residential Broker Price Opinion. The Opinion is admissible under Federal Rule of Evidence 901.

$69,159 as of January 2018. It does not show the property's value in March 2019, when Padgett filed his state-court petition. (Docket Entry No. 7-1 at 6). Padgett contends that the property sustained damages during Hurricane Harvey, and that Chase Bank's Opinion failed to deduct repair costs. (Docket Entry No. 15 at 8). But the Opinion incorporated repair costs by designating the house condition as "poor." (Docket Entry No. 1-2 at 2).

Padgett also argues that Chase Bank waived its right to removal. Padgett contends that because the May 2008 Promissory Note Charles Foster signed stated that "[t]he validity and enforcement of the Lender's security interest . . . will be governed by the laws of the State where the property is located," Chase Bank agreed to litigate in Texas state court. (*Id*.). This provision is not a forum-selection clause, much less a mandatory one. It is a choice-of-law provision that does not preclude removal. *See Bell v. Citimortgage, Inc.*, No. SA-14-CA-49, 2014 WL 12580447, at *1 (W.D. Tex. Mar. 25, 2014); *Mills Grp. Ltd. v. Oceanografia, S.A.*, No. H-08-3449, 2009 WL 175083, at *1–*2 (S.D. Tex. Jan 26, 2009); *see also City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) ("For a contractual clause to prevent a party from exercising its right to removal, the clause must give a clear and unequivocal waiver of that right."). Padgett fails to point to any provision in the Promissory Note or other loan documents showing that Chase Bank unequivocally waived its right to remove. In any event, Padgett cannot show that he signed the Promissory Note or was an intended third-party beneficiary. As a result, he cannot enforce the contract provision against Chase Bank. *See City of Houston v. Williams*, 353 S.W.3d 128, 145 (Tex. 2011). The court has diversity jurisdiction. Padgett's motion to remand is denied.

**III.    Chase Bank's Motion to Dismiss**

Chase Bank argues that Padgett's claims should be dismissed because he does not have

standing to stop a foreclosure proceeding on Charles Foster's property.  (Docket Entry No. 4).

Article III standing requires the plaintiff to have "(1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Padgett's petition asserts statute-of-limitations and quiet-title claims.  (Docket Entry No. 1-1

at 6–7). He must establish standing for each.  *Allen v. Wright*, 468 U.S. 737, 752 (1984).  Both

require Padgett to show that he has a property interest in the house.  *See Price v. Bank of N.Y.*

*Mellon*, No. 2:15-cv-97-J, 2015 WL 6549159, at * 2 (N.D. Tex. Oct. 28, 2015) ("In the context of

debts, the defenses of limitations is generally a personal privilege of the debtor . . . [or the] one who

lawfully acquires property or any right on which the remedy operates, such as a lienholder or

subsequent purchaser." (quotation omitted)); *Ford v. Exxon Mobile Chem. Co.*, 235 S.W.3d 615, 618

(Tex. 2007) (a claim for quiet title or to clarify ownership by removing a cloud on the title requires

showing an effect on the plaintiff's interest in the property).

Padgett argues that he has "equitable title" because his wife inherited an interest from her

grandmother, and Padgett shares his wife's interest under Texas community-property law.  (Docket

Entry No. 10 at 4).  Padgett alleges that Kimbro's will states:

> I do hereby leave all of my property, real, personal or mixed, now owned by me or
> hereafter acquired by me in any manner, intending to include both separate and
> community property to my two (2) grandchild read as follows: Charles Jarid Foster
> and Vanessa Lorin Foster to share and share alike.

(*Id*. at 1).  The Special Warranty Deed Foster signed in January 2007 conveyed the house to himself,

subject to the following reservations and conditions:

> This deed is executed pursuant to the decree of the Probate Court Number Four (4) of Harris County, Texas, admitting to probate the Will of Emma Lou Kimbro Beavers. This deed is subject to all easements, restrictions, conditions, covenants, and other instruments of record.

(*Id*. at 5). Padgett argues that the "Reservation and Exceptions" clause in the Special Warranty Deed means that the Deed was subject to Kimbro's will and included Vanessa Foster's interest in the house. (*Id*. at 5–6). This argument is unpersuasive.

The Deed does not indicate, as Padgett contends, that it is subject to the will. It states only that it was executed under the Probate Court decree, subject to "easements, restrictions, conditions, covenants, and other instruments of record," not to the will. The Special Warranty Deed identified one grantee, Charles Foster. Nothing in the Deed shows that either Vanessa Foster or Padgett was an intended beneficiary. (Docket Entry No. 1-1 at 28). Nothing in the will prevented the estate administrator from devising a specific asset—the house—to one of the beneficiaries but not the other, so long as they shared the overall estate "in equity."

Even if Vanessa Foster had an equitable interest in the house, Padgett does not. Padgett concedes that Vanessa Foster inherited her alleged interest in the property from Kimbro. Under Texas law, Vanessa Foster's inherited interest in the house is her separate property and not part of the spousal community property. TEX. FAM. CODE § 3.001(2); *see also Hinton v. Burns*, 433 S.W. 3d 189, 197 (Tex. App.—Dallas 2014, no pet.); *Clark v. Clark*, No. 13-15-222, 2017 WL 1483307, at *3 (Tex. App.—Corpus Christi Apr. 20, 2017, pet. denied); *McVay v. Par.*, 7 F.3d 76, 78 (5th Cir. 1993). Without a property interest, Padgett lacks standing, and his claims are dismissed.

## IV. Conclusion

Chase Bank's motion to dismiss is granted, and Padgett's motion to remand is denied. (Docket Entry Nos. 4, 7). Even though Padgett represents himself, his petition and the record show

no standing and no jurisdiction as a matter of law.  Because amendment would be futile, Padgett's

claims are dismissed, with prejudice and without leave to amend.  *McGee v. Citi Mortg., Inc*. 680

F. App'x 287, 291 (5th Cir. 2017).  An order of dismissal is separately entered.

SIGNED on June 3, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge